■ POLAR INTERNATIONAL BROKERAGE CORP. et al., Respondents, v BENJAMIN S. RICHMAN et al., Defendants, and ASSOCIATED FINANCIAL CORPORATION et al., Appellants. [820 NYS2d 584]—

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered December 13, 2004, which, insofar as appealed from, denied defendants-appellants' motion to dismiss the first amended complaint as against them, unanimously reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the first amended complaint as against them.

In 1989, plaintiff Polar International Brokerage Corp. (Polar) and defendant Meadowbrook-Richman, Inc. (MRI), two firms engaged in insurance brokerage and claims adjustment, entered into a joint venture (see Meadowbrook-Richman, Inc. v Associated Fin. Corp., 253 F Supp 2d 666, 671 [SD NY 2003]). In 1992, while this joint venture was in effect, Hurricane Andrew damaged a number of Florida and Louisiana housing projects owned (directly or indirectly) by defendant Associated Financial

Corporation (AFC), a customer of MRI and Polar. MRI, acting through its principal, defendant Benjamin S. Richman, administered the insurance proceeds AFC received on account of the hurricane, which involved hiring contractors to perform *reconstruction work. At the time he was administering AFC's* hurricane-related insurance proceeds, Richman was nominally designated as chairman of Polar's board, pursuant to the joint venture agreement between MRI and Polar. The Polar/MRI joint venture was terminated in 1995 (*see Meadowbrook-Richman, Inc. v Associated Fin. Corp.*, 325 F Supp 2d 341, 349 [SD NY 2004]).

In 1998, MRI commenced an action against AFC and certain of its corporate and individual affiliates (the AFC defendants) in the United States District Court for the Southern District of New York (the *Meadowbrook* action). In the *Meadowbrook* action, MRI sought to recover fees for its claims adjustment work relating to the hurricane damage to AFC's properties. In response, the AFC defendants alleged that MRI, through Richman, its principal, in administering AFC's hurricane-damage claims, had perpetrated an unlawful and tortious scheme to take kickbacks and bribes from the contractors MRI hired to repair the properties, resulting in the misappropriation of millions of dollars that should have been used to reconstruct the damaged properties.[1] Based on these allegations (among others), the AFC defendants asserted counterclaims against MRI and third-party claims against Richman and, in addition, Polar, which had been a joint venturer with MRI at the time of the wrongdoing.

In May 2000, Polar commenced, in the *Meadowbrook* action, a fourth-party action against Lawrence Penn (a defendant herein) and PL Acquisition, Inc. (PLA), an entity controlled by Penn. PLA, as the holder of an exclusive contractual right to place insurance for AFC's properties, had awarded the AFC account to the MRI/Polar joint venture (*see Meadowbrook-Richman*, 325 F Supp 2d at 346-348). In its fourth-party complaint, Polar alleged that Penn and PLA had colluded in, and profited from, the kickback scheme perpetrated by MRI and Richman. On this basis, Polar sought indemnity or contribution from Penn and PLA for any judgment the AFC defendants might obtain on their third-party claim against Polar.

In April 2003, Polar, the AFC defendants, Penn, and PLA entered into a Settlement Agreement and Release (SAR) in the

---

1. Richman has pleaded guilty to federal charges of conspiracy to commit wire and mail fraud in connection with these matters (*see Meadowbrook-Richman*, 325 F Supp 2d at 354).

*Meadowbrook* action. Pursuant to the SAR, all claims in the *Meadowbrook* action between and among the parties to the SAR were dismissed with prejudice by a "so ordered" stipulation. The SAR contains the following covenant not to sue: "The Polar Entities agree that, upon execution of this agreement, none of them . . . shall commence, maintain or prosecute any action or assert any claim against any or all AFC Entities, or any of their respective affiliates, officers, directors, partners, agents, families, insurers, successors or assigns . . . for damages or loss of any kind, based upon any claim, demand, cause of action or thing dismissed herein, except for any obligation imposed by this agreement." As defined by the SAR, the term "Polar Entities" includes Polar and its principal, Stanley Kleckner, who is Polar's coplaintiff in this action. It is undisputed that all defendants-appellants on this appeal—AFC, Deane Earle Ross (AFC's president), Penn, and Community Housing Enterprises, Inc. (CHE), an entity controlled by Penn—are beneficiaries of Polar's and Kleckner's covenant not to sue in the SAR.

At the same time the *Meadowbrook* action was being litigated, Polar and Kleckner were being sued in a related lawsuit in Louisiana federal court (the *Bacmonila* action). In the *Bacmonila* action, the AFC affiliate operating one of the housing projects damaged by Hurricane Andrew sued its insurer, Travelers Indemnity Company of Illinois (Travelers), to require Travelers to fund the reconstruction of the property. In 2000, Travelers brought a third-party action against (inter alia) MRI, Richman, AFC, CHE, Ross, Penn, Polar and Kleckner, based on allegations that such third-party defendants had participated in Richman's unlawful kickback scheme. This was the very same kickback scheme at issue in the third-party and fourth-party complaint in the *Meadowbrook* action. In 2002, Polar and Kleckner settled Travelers' claims against them in the *Bacmonila* action for $300,000.

In April 2003—the same month the SAR in the *Meadowbrook* action was executed—Polar and Kleckner commenced the instant action against defendants-appellants AFC, CHE, Ross and Penn (collectively, the AFC/Penn defendants), among others.[2] The complaint in this action seeks to require the AFC/Penn defendants to indemnify and reimburse Polar and Kleckner for the costs of defending and settling the *Bacmonila* action. Polar and Kleckner seek this relief against the AFC/Penn defendants based on the claim that the AFC/Penn defendants bear greater responsibility than do Polar and

---

2. Richman and MRI were also named as defendants in this action, but a stipulation has been filed discontinuing the action as against them.

Kleckner for the kickback scheme perpetrated by MRI and Richman. In lieu of answering, the AFC/Penn defendants moved to dismiss the complaint on the ground that it was barred by the res judicata effect of the stipulation of dismissal in the *Meadowbrook* action and by the covenant not to sue in the SAR. The IAS court denied the motion. We now reverse.

The prosecution of the instant action is barred by the covenant Polar and Kleckner made in the SAR not to sue the AFC/Penn defendants "for damages or loss of any kind, based upon any claim, demand, cause of action or thing dismissed herein." Under the principle that we should avoid an interpretation of a contract that would leave one of its clauses without meaning or effect (*see Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]), we cannot interpret the covenant not to sue simply to bar reassertion of the same claims that were being dismissed with prejudice in the *Meadowbrook* action, since the reassertion of such claims would have been barred in any event by res judicata. Thus, although the covenant not to sue perhaps could have been more artfully drafted, the parties' intent must be deemed to have been to bar any future suit by Polar and Kleckner against the AFC/Penn defendants based on the subject matter underlying the claims between these parties in the *Meadowbrook* action. That subject matter, as previously indicated, was the unlawful kickback scheme perpetrated by MRI and Richman in the administration of the AFC housing projects' claims for hurricane damage. The instant action arises from this same subject matter, in that the basis for the claims Polar and Kleckner assert herein to recover the cost of defending and settling the *Bacmonila* action is the alleged responsibility of the AFC/Penn defendants for the aforementioned kickback scheme. Accordingly, since Polar and Kleckner failed to have the SAR include a reservation of their right to pursue their present claims against the AFC/Penn defendants, such claims are barred by the covenant not to sue.[3]

Since we find that the covenant not to sue requires that the AFC/Penn defendants' motion to dismiss be granted, we need not address the AFC/Penn defendants' argument that principles of res judicata also require the granting of their motion. Concur—Mazzarelli, J.P., Saxe, Friedman, Sullivan and Sweeny, JJ.

---

3. We reject Polar's and Kleckner's unsupported argument that their covenant not to sue is without effect because they did not also execute a release in favor of the AFC/Penn defendants.